Rel: July 2, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## SPECIAL TERM, 2026

_____

### CL-2025-0139

_____

**Kennon Hager**

**v.**

**Mary Hager**

_____

### CL-2025-0176

_____

**Mary Hager**

**v.**

**Kennon Hager**

**Appeals from Etowah Circuit Court**
**(DR-17-900212)**

EDWARDS, Judge.

In May 2017, Mary Hager ("the wife") filed in the Etowah Circuit Court ("the trial court") a complaint seeking a divorce from Kennon Hager ("the husband"). After a trial held over multiple days in 2023 and 2024, on December 3, 2024, the trial court entered a judgment divorcing the parties and dividing their property. The husband is a radiologist and operates two radiology clinics -- Advanced Imaging Gadsden, LLC ("AIG"), and Advancing Imaging Alabama, LLC ("AIA"); the buildings housing the clinics and the associated real property is owned by a company that was co-owned by the parties -- 820 Properties, LLC ("820 Properties"). AIG and AIA were valued by the parties and their experts as one combined entity, and the value was vigorously litigated; the evidence presented at trial indicates that the value of AIG/AIA as of December 2018 could have been as much as $1.65 million or as low as $316,901. Similarly, the value of 820 Properties was contested, with evidence indicating that it was valued as high as $2.38 million and as low as $1.26 million. The husband was awarded AIG/AIA and 820 Properties, and the wife was awarded $329,181.32 for her interest in AIG/AIA and $509,733.50 for her interest in 820 Properties. The wife was also

2

awarded an additional $416,530.88 as a property settlement. The husband was awarded his gun collection, and the wife was awarded her jewelry; the value of those assets was also contested, and the evidence indicated that the value of the gun collection could be as high as nearly $1.29 million or as low as $658,952 and that the value of the wife's jewelry could be as high as $128,451 or as low as $60,000. The wife argued that the jewelry should be considered her separate property, but the husband contended that it was marital property. Certain of the husband's retirement accounts and all of the wife's retirement accounts were equally divided between the parties; the trial court set the date of the valuation of those accounts as June 30, 2022.

The husband filed a timely postjudgment motion in which he argued that the division of the property was not equitable. The husband specifically complained that the trial court's decision to value the parties' retirement accounts as of June 30, 2022, instead of at the time of the filing of the divorce complaint, was inequitable because, he contended, the wife had, by June 2022, partially depleted her accounts, while the husband's accounts had increased in value. He also complained that the requirement in the divorce judgment that he pay the wife $1.6 million

3

within 90 days was financially impossible. The wife filed a response to the husband's postjudgment motion in which she also requested postjudgment relief based on her claim that the division of the property, other than the division of the retirement accounts, was inequitable. The wife specifically requested that she be awarded 50% of the marital assets, as she had requested at the trial. The trial court entered an amended judgment changing the timing of the parties' submission of qualified domestic-relations orders and correcting a typographical error in the divorce judgment; however, that amended judgment stated that all other provisions of the divorce judgment remained in full force and effect. The husband filed a notice of appeal, and the wife filed a cross-appeal.

On appeal, both parties contest the trial court's property division as inequitable. They both also assert that the trial court's failure to make findings of fact regarding the value of the parties' main assets prevents them from making adequate arguments concerning the property division. We agree that, in this particular case, the trial court's failure to make written findings relating to the values of AIG/AIA; 820 Properties; the gun collection; and the wife's jewelry, if it was considered a marital asset,

4

prevents this court from determining whether the trial court's division of the marital estate is equitable.

As we recently explained in Kennerly v. Kennerly, 412 So. 3d 680, 682 (Ala. Civ. App. 2024):

"In Wilson v. Wilson, 93 So. 3d 122, 128-29 (Ala. Civ. App. 2011), this court stated, in pertinent part:

"'Generally, in the absence of specific findings of fact, this court will assume that the trial court made those findings necessary to support its judgment. See Ex parte Fann, 810 So. 2d 631, 636 (Ala. 2001). However, when, after reviewing the record and the language of the judgment, this court is unable to determine the precise nature of the factual findings of the trial court as to the classification and value of marital property, thereby inhibiting this court's ability to determine whether a property division is equitable, this court should remand the cause for further clarification from the trial court. See Wilhoite v. Wilhoite, 897 So. 2d 303, 308-09 (Ala. Civ. App. 2004); and Giardina v. Giardina, 987 So. 2d 606, 622-23 (Ala. Civ. App. 2008).'"

The situation in the present case is like that presented in Kennerly. Because of the widely divergent values of the various marital assets presented by the testimony of the parties and by the various experts, we are unable to determine what values the trial court assigned to AIG/ AIA; 820 Properties; the gun collection; and, if it was considered a marital

5

asset, the wife's jewelry in fashioning its property division, which has made the task of determining whether the division of the property is equitable exceedingly difficult. In accordance with the practice utilized in Kennerly, we remand this cause to the trial court for it to enter an order specifying the values that it assigned to AIG/AIA, 820 Properties, the gun collection, and the wife's jewelry. The trial court is instructed to make a return to this court within 28 days of the date of this opinion.

CL-2025-0139 -- REMANDED WITH INSTRUCTIONS.

CL-2025-0176 -- REMANDED WITH INSTRUCTIONS.

Moore, P.J., and Hanson and Fridy, JJ., concur.

Bowden, J., concurs specially, with opinion.

BOWDEN, Judge, concurring specially.

It is a well-established cornerstone of our appellate review that, "[w]hen evidence is taken ore tenus and the trial judge makes no express findings of fact, [the appellate courts] will assume that the trial judge made those findings necessary to support the judgment." Espinoza v. Rudolph, 46 So. 3d 403, 412 (Ala. 2010). The ore tenus standard affords trial judges a tremendous amount of discretion and deference.

This case raises an issue that we have addressed before -- what to do when parties challenge on appeal the equity of a property division in a divorce judgment but the trial court has made no express findings of fact as to the value of the marital assets. In Kennerly v. Kennerly, 412 So. 3d 680, 682 (Ala. Civ. App. 2024), on which the main opinion relies, we stated:

> "'Generally, in the absence of specific findings of fact, this court will assume that the trial court made those findings necessary to support its judgment. See Ex parte Fann, 810 So. 2d 631, 636 (Ala. 2001). However, when, after reviewing the record and the language of the judgment, this court is unable to determine the precise nature of the factual findings of the trial court as to the classification and value of marital property, thereby inhibiting this court's ability to determine whether a property division is equitable, this court should remand the cause for further clarification from the trial court. See Wilhoite v. Wilhoite, 897 So. 2d 303, 308-09 (Ala. Civ.

7

App. 2004); and <u>Giardina v. Giardina</u>, 987 So. 2d 606, 622-23 (Ala. Civ. App. 2008).'"

(Quoting <u>Wilson v. Wilson</u>, 93 So. 3d 122, 128-29 (Ala. Civ. App. 2011).)

The exception to the general rule described in <u>Kennerly</u> is intended to allow this court to conduct meaningful appellate review of whether the evidence could reasonably support the property division in a divorce judgment, which must be equitable. Although I agree with the main opinion regarding its decision to follow our own precedent in this case, I am concerned that the exception to the general rule described in <u>Kennerly</u> fails to provide clear guidance to judges and litigants as to what is actually required for this court to be able to "'determine the precise nature of the factual findings of the trial court as to the classification and value of marital property.'" <u>Id.</u>

Under what circumstances does a lack of factual findings inhibit our ability to review a division of marital property? Are we able to determine the value of an asset without a specified value when the evidence of the value of the asset is minimally divergent? Widely divergent? Or are express findings as to the value of an asset required in every marital-property-distribution decision when the value of an asset without a specified value is disputed?

In considering whether factual findings are necessary in marital-property-division matters, I believe it would be appropriate for a trial court to consider (1) whether there was conflicting evidence as to the value of an asset and to what extent the potential values diverge, (2) whether the value of an asset was sharply contested through expert testimony or other legitimate sources of valuation, and (3) whether an asset without a specified value represents a small or large share of the value of the entire marital estate.

Similarly, to avoid the application of the exception in Kennerly and a remand, the parties should consider filing a motion for more definite findings. Once a divorce judgment is entered, it is clear to the parties whether the trial court has made specific factual findings as to the value of a given marital asset. If the absence of such findings will inhibit the ability of the parties to assess the equity of the judgment and to make arguments on appeal, an avenue exists through Ala. R. Civ. P. 52(a) for the parties to request that the trial court make the absent findings. That rule states that, "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court may upon written request and shall when required by statute, find the facts specially and state separately its

9

conclusions of law thereon." (Emphasis added.) The trial court's decision whether to amend the judgment in response to such a request is, of course, permissive. In our holdings remanding causes because of our inability to conduct a meaningful appellate review in Kennerly, Wilson, and Wilhoite v. Wilhoite, 897 So. 2d 303 (Ala. Civ. App. 2004), we have not held, and we do not hold now, that failing to make specific factual findings as to the value of a marital asset is error.

However, if a party makes a claim on appeal that the marital-property distribution was not equitable, it is, in my view, incumbent on the party making such a claim to seek the findings from the trial court necessary to evaluate that claim. A failure of the trial court to make those findings, when specifically asked, would weigh considerably in my decision to remand the case back to the trial court to obtain the factual findings authorized by Kennerly. Conversely, if both parties claim that the marital-property distribution was not equitable, yet neither party asks the trial court to make specific findings of fact as to the value of certain property, that would be a significant factor in my decision whether to remand the case to the trial court for additional proceedings. See Smith v. Equifax Servs., Inc., 537 So. 2d 463, 465 (Ala. 1988) ("There

is a rather obvious fundamental difference in upholding the trial court's judgment and reversing it; this Court will not reverse the trial court's judgment on a ground raised for the first time on appeal.").[1]

---

[1]I realize that we are <u>remanding</u> this case for additional proceedings and not <u>reversing</u> the judgment. But in many instances that distinction will have little practical effect on the trial court and the parties to the litigation. The trial judge will need to sift through the record, because the case was tried months, if not years ago. The parties are waiting on the finality of their divorce. Additional proceedings may be required because the character, and even the ownership, of the marital property may have changed hands.